# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NAKREISHA MCFARLAND, MINOR MCFARLAND ONE, MINOR MCFARLAND TWO, MINOR MCFARLAND THREE, and MINOR MCARLAND FOUR,<br><br>Plaintiffs,<br><br>v.<br><br>HOUSING AUTHORITY OF RACINE COUNTY and MICHAEL SCHATTNER,<br><br>Defendants. | Case No. 21-CV-299-JPS<br><br>**ORDER** |

On June 24, 2020, pro se Plaintiff Nakreisha McFarland ("Plaintiff") filed a civil rights case against her landlord, Michael Schattner ("Schattner"), and the Housing Authority of Racine County ("HARC") (collectively, "Defendants"), regarding the circumstances surrounding the revocation of her Section 8 Housing Choice Vouchers ("Section 8 Voucher"). (Docket #1). On March 9, 2021, the matter was transferred to the Eastern District of Wisconsin. (Docket #23). Schattner has filed a motion to dismiss, (Docket #29), which is now fully briefed. For the reasons explained below, the Court will deny the motion.

1. **LEGAL STANDARD**

Schattner moves to dismiss the complaint for failing to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint

must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (internal citations and quotations omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (internal citations and quotations omitted).

## 2. RELEVANT FACTS

Plaintiff lived at 1244 Geneva Street in Racine, Wisconsin (the "Property") from 2009 to 2018 with her five[1] children, two of whom are disabled. Schattner owned the Property, and Plaintiff paid him rent that was offset by her Section 8 Vouchers. The Section 8 Vouchers are part of a federally funded housing benefits program and administered through HARC.

On June 20, 2018, Plaintiff asked HARC to inspect the Property because she suspected there were issues with the foundation. Around that time, HARC asked Plaintiff to recertify for the Section 8 Voucher program,

---

[1] Plaintiff's complaint says she has five children, but she only sues on behalf of four.

even though she was not due for recertification until August 1. Plaintiff was confused about the timing of the recertification. However, on June 21, 2018, Plaintiff received a letter from HARC explaining that it was customary to begin the Section 8 Voucher recertification process within 90 to 120 days of the actual recertification date. (Docket #1-4 at 1).[2] The letter also explained that "[t]o begin portability," i.e., to begin the process of moving with a Section 8 Voucher, Plaintiff would need her landlord, Schattner, to fill out a good standing form. (*Id.*)

On July 13, 2018, Plaintiff wrote to HARC to ask for an increase in her Section 8 Vouchers so that she could move into a larger, wheelchair-accessible home that would accommodate her five children, including her physically-disabled son who uses a feeding tube. (Docket #1-6 at 1). On July 24, 2018, Plaintiff again wrote to HARC to request an increase in her Section 8 Vouchers. (Docket #1-5 at 1). She also wrote that, earlier that day, Schattner had stopped by her house and told her he was going to give her a 28-day notice to vacate the Property by September if she did not leave earlier. She wrote that, "he want[s] that because my foundation [has] been slippery at the front of my house, which is not my fault." (*Id.*) There appears to be a final line of text in the letter, but the photocopier has cut it out.

On July 30, 2018, HARC wrote to Plaintiff to explain that, because she was on a month-to-month tenancy, Schattner could opt to terminate the lease without cause after providing sufficient notice. (Docket #1-8 at 1). That same day, Schattner served her with the 28-day termination notice. (Docket

---

[2]The Court will consider the exhibits attached to the complaint solely for the purpose of determining whether Plaintiff has stated a claim for relief. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

#1-9 at 1). Schattner had also signed a Notice to Move/Good Standing Form in support of Plaintiff's Section 8 Voucher portability, which was dated May 29, 2018. (Docket #1-9 at 2). On July 31, 2018, Plaintiff again wrote to HARC, explaining that she had gone down to the city's health department earlier that week to ask for an inspection of her foundation, which was caving in at the basement. (Docket #1-7 at 1).

On August 2, 2018, the Racine Building Inspection Department wrote to Schattner to inform him that there were issues with his foundation that required prompt attention. (Docket #1-10 at 1). Schattner was ordered to address the issues by September 1, 2018 or face legal action. (*Id.*) Around this time, Plaintiff also alleges that Schattner "pressured" her into signing the Notice to Move/Good Standing Form. (Docket #1 ¶ 26). On August 23, 2018, Schattner "brow-beat" Plaintiff into executing a Tenant Request for Portability. (*Id.* ¶ 29). Plaintiff says she never wanted to leave the Property, she "simply wanted a dangerous condition remedied," but had "the rug pulled out from under her and had to cover herself by signing" the document. (*Id.*) She alleges that Schattner retaliated against her for voicing her concerns about the foundation's structural issues.

Plaintiff believed that Schattner could only evict her for cause, and she sought copies of her Section 8 file, including her original lease and an update that she believed had been signed in 2018. Around this time, HARC informed Plaintiff that it had neither a copy of her original lease for the Property, which was signed back in 2009, nor her original voucher. HARC also had no record of the 2018 lease.

On August 30, 2018, the United States Department of Housing and Urban Development ("HUD") wrote Plaintiff a letter, which sought to address various issues she had raised with them earlier that month. (Docket

#1-11 at 3–4).[3] Among other things, the letter explained that she needed to sign off on her Section 8 Voucher to continue receiving those benefits. On September 17, 2018, Plaintiff wrote to HARC again to complain that she was being evicted without cause. (Docket #1-12 at 1).

At some point, Plaintiff signed her Section 8 Voucher and asked for an extension of time to find a new place to live. On October 11, 2018, HARC denied her request for an extension of time because its policy was to give "no extensions except to provide an accommodation for a person with a disability." (Docket #1-13 at 1). Without addressing Plaintiff's two disabled children, HARC determined that Plaintiff did not qualify for an extension, and encouraged Plaintiff to find housing before October 30, 2018, when her Section 8 Voucher expired. Plaintiff did not find suitable housing in time to meet the deadline, and HARC terminated her benefits. (Docket #1-14). Plaintiff alleges that she did not receive a hearing before her Section 8 Voucher benefits were terminated. (Docket #1 ¶ 34).

The Section 8 Voucher Tenancy Addendum, which accompanied Plaintiff's 2009 lease of the Property, includes certain provisions regarding the "Termination of Tenancy by Owner." (Docket #1-2 at 6). It explains, "after the initial lease term," an owner may terminate a tenancy for good cause, which includes, "a business or economic reason for the termination of the tenancy (such as sale of the property, renovation of the unit, the owner's desire to rent the unit for a higher rent)." (*Id.* at 7).

---

[3] As with other documents appended to the complaint, this letter only appears in partial form.

Page 5 of 10
Case 2:21-cv-00299-JPS   Filed 01/24/22   Page 5 of 10   Document 40

3. **ANALYSIS**

The Court "construe[s] pro se complaints liberally, holding them to a less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)). Plaintiff's first cause of action is framed as a "preliminary injunction," and her second as one for "declaratory relief and permanent injunction." The Western District did not treat this case as a preliminary injunction matter, and the parties have not litigated the case in that fashion. The Court will, therefore, construe the complaint as simply that—a complaint—which states two potential causes of action, only one of which applies to Schattner. Specifically, Plaintiff alleges that Schattner evicted her without cause in retaliation for her complaints about the foundation.

In response, Schattner argues that there is "nothing *per se* unlawful in one person pressuring another" to sign a form, and thus Plaintiff has failed to state a claim against him. (Docket #29-2 at 3). Additionally, Schattner states,

> [I]t appears from the face of the complaint that the notice to terminate the tenancy was motivated by a need to fix the foundation of the home in which Plaintiffs resided, which Plaintiff Nakreisha McFarland herself had requested be repaired before any action had been taken by Schattner. The complaint alleges plaintiff Nakreisha McFarland requested HARC to inspect an unsafe, dangerous condition of the home's foundation on or before June 20, 2018. Complaint ¶¶ 13, 14. The complaint alleges the foundation was "about to cave in." *Id.*, ¶ 23. She was then served a 28 day notice to vacate the home on July 30, 2018. *Id.*, ¶ 25. The home had been inspected by the City of Racine's Code Enforcement Division of the Building Investigation Department, which then issued a written order asserting code violations for the condition of the foundation and ordered its repair. *Id.*, Exhibit 10. Based on the foregoing, Schattner did nothing more than follow the

>     legal notice process to remove Plaintiff from the Geneva Street
>     home to make ordered repairs after she had complained to
>     HARC and the City of Racine about the unsafe condition of
>     the Geneva Street home.

(Docket #29-2 at 4).

Neither party disputes that Plaintiff sought an inspection of the foundation before Schattner ended the tenancy. Plaintiff alleges that Schattner told her that he was planning to end the tenancy on July 24, 2018 and served her with the 28-day notice to vacate on July 30, 2018. It is not clear when the building inspector inspected the Property, but Plaintiff's July 31, 2018 letter to HARC suggests that the building inspector had not come by that point. (Docket #1-7). Schattner did not receive the orders to address the foundation issues until August 2, 2018. Based on this timeline, Plaintiff's allegations that her tenancy was terminated because she complained about the foundation issue are plausible. Whether Plaintiff's allegations are true is an issue of fact to be addressed at the fact-finding stage of the litigation. The Court now turns to whether Plaintiff's allegations constitute a federal cause of action[4] or a state cause of action over which the Court might exercise supplemental jurisdiction. 28 U.S.C. § 1367.

### 3.1 Retaliatory Eviction

The Fair Housing Act ("FHA") provides that,

>     It shall be unlawful to coerce, intimidate, threaten, or interfere
>     with any person in the exercise or enjoyment of, or on account
>     of his having exercised or enjoyed, or on account of his having

---

[4]The Court will not engage in analysis of whether Schattner's alleged conduct violates the First Amendment because, as a threshold matter, it appears that private landlords who simply receive payment via Section 8 housing vouchers are not subject to liability pursuant to Section 1983. *See Dejesus v. Vicky*, No. 21-1403, 2021 WL 1546228, at *4 (E.D. Pa. Apr. 20, 2021) (citing cases).

> aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C § 3617. Sections 3603, 3605, and 3606 are not relevant to this matter (they deal with the types of properties covered by the FHA, real-estate transactions, and brokerage services). Section 3604 prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Thus, "[i]f a landlord retaliates against a tenant or prospective tenant for exercising their rights under those provisions, then that person may have a retaliation claim under the Fair Housing Act." *Johnson v. Flannery*, 2022 WL 103710, at *2 (N.D. Ill. Jan. 11, 2022) (citing *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 868 (7th Cir. 2018)). A claim for retaliation under the FHA requires Plaintiff to allege that "(1) she engaged in protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two." *Wetzel*, 901 F.3d at 868 (finding plaintiff stated a claim for retaliation when she was harassed by the administration of a senior living community after she submitted complaints that residents harassed her for her sexual orientation).

In the present case, Plaintiff alleges that she complained to HARC and the city's building inspector about the status of her home's foundation, which was caving in at certain parts in the basement. In retaliation, she alleges, Schattner told her he was ending the tenancy. While this does seem to allege retaliatory conduct, Plaintiff has not alleged that it was based on a protected class—for example, she has not alleged facts suggesting that her complaints to HARC and the building inspector were related to

accommodations that she sought for her disabled children. *Johnson v. Flannery*, 2022 WL 103710, at *2 ("[Plaintiff] alleges that he was retaliated against for reporting [his landlord] to the local health department . . . . That may be retaliation, but it is not retaliation under the Fair Housing Act."); *Romero v. Pinnacle Equities, LLC*, 283 F. App'x 429, 430 (8th Cir. 2008) (upholding dismissal of FHA retaliation claim "because nothing in the amended complaint stated or implied that his eviction was in any way based on, or related to, a factor protected under the FHA"). Thus, Plaintiff has failed to state a claim under the FHA.

### 3.2 Prohibited retaliatory conduct – Wis. Stat. § 704.45

HARC has not moved to dismiss the claims against it, and it appears to the Court that they are sufficiently alleged. Briefly, the causes of action against HARC are properly understood as claims arising under the Due Process Clause of the Fourteenth Amendment on the grounds that (1) Plaintiff was not afforded additional time to use her Section 8 Voucher considering her two disabled children; and (2) Plaintiff did not receive a hearing before the termination of her benefits. As long as these claims remain pending, the Court may exercise supplemental jurisdiction over related state-court claims. 28 U.S.C. § 1367(a).

Wisconsin Statutes section 704.45 provides that "a landlord in a residential tenancy may not . . . refuse to renew a lease . . . if there is a preponderance of evidence that the action or inaction would not occur but for the landlord's retaliation against the tenant for doing any of the following: [m]aking a good faith complaint about a defect in the premises to . . . a local housing code enforcement agency." Plaintiff has alleged that her tenancy was terminated in retaliation for her complaint to HARC and

Page 9 of 10
Case 2:21-cv-00299-JPS   Filed 01/24/22   Page 9 of 10   Document 40

the city's building inspector about the caving-in foundation. This is sufficient to state a claim under Wisconsin state law.

To be sure, Plaintiff's complaint contains some contradictions—she claims that Schattner forced her to move, but addenda to her complaint suggest she was independently pursuing another place to live to accommodate her family's needs. Nonetheless, as far as the motion to dismiss is concerned, Plaintiff has adequately stated a claim. As for Schattner's argument that Plaintiff does not seek relief from him specifically, Plaintiff's complaint does seek "reasonable attorney's fees and treble damages" under § 1983. (Docket #1 ¶58). While relief under § 1983 is unavailable against Schattner, the Court has liberally construed the allegations in Plaintiff's complaint to find that she sufficiently stated a claim under a Wisconsin state law where damages and fees are also available. *See Paape v. Grefsheim*, 888 N.W.2d 247 (Table), 2016 WL 5923088, at *3–4 (Wis. Ct. App. 2016) (unpublished).

### 4.    CONCLUSION

For the reasons explained above, Schattner's motion to dismiss the complaint (Docket #29) will be denied.

Accordingly,

**IT IS ORDERED** that Michael Schattner's motion to dismiss (Docket #29) be and the same hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 24th day of January, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge